# Smathers *v.* Pittsburg & Butler Street Railway Company, Appellant.

*Negligence—Street railways—Collision between car and wagon—Duty to " stop, look and listen "—Crossing.*

1. It is the absolute duty of a traveler or the driver of a team at the intersection of two city streets upon which is laid a line of street railway to look immediately before going upon the tracks, and failure to do so is negligence per se. If when he looks he sees an approaching car so near as to make an attempt to cross dangerous, it is his duty to stop; or, if when he looks at the edge of the tracks his view is obstructed so that he cannot see it then becomes his duty to listen, and under some circumstances it may be his duty to stop as if when he looks and listens he still is in doubt about the location and movement of the car. If in any of these situations he fails in the performance of the duty required he is guilty of contributory negligence and cannot recover.

2. In such a case no question can arise as to the proper place to look or whether there is a better place as in steam railroad grade crossing cases, because the settled rule is that the place to look is immediately before going upon the tracks. What the driver of a team is required to do after looking depends upon what he sees when he looks. Whether he failed to perform his duty under the circumstances is sometimes a question of law for the court and sometimes

of fact for the jury. If when he looks he sees a car so near as to make the attempt to cross dangerous and notwithstanding he attempts the crossing and a collision results he is so clearly guilty of contributory negligence that the court should say so as a matter of law. He can take no close chance except at his peril. If, however, when he looks he sees a car so far distant that in the exercise of ordinary prudent judgment he is justified in concluding that he can safely make the crossing and attempts to do so, it is for the jury to determine whether under the circumstances he should have stopped before attempting to drive over the tracks.

3. In an action by a wife against a street railway company to recover damages for the death of her husband, it appeared that at the time of the accident plaintiff and her husband were driving in a buggy approaching a crossing, the husband keeping a lookout in one direction and the wife in another. Both continued to look until the head of the horse was at the edge of the tracks. As the husband looked, he then saw for the first time a car rapidly approaching over an elevation in the street which obstructed a further view from the crossing. The car was running at an excessive rate of speed. The deceased immediately turned the head of the horse and attempted to drive along side of the track. Neither the horse nor the buggy were actually on the track, but the front wheel of the buggy was close enough to be caught by the overhang of the car. *Held,* that the question of the deceased's contributory negligence was for the jury, and that a verdict and judgment for plaintiff should be sustained.

Argued Oct. 11, 1909. Appeal, No. 119, Oct. T., 1909, by defendant, from judgment of C. P. Butler Co., Sept. T., 1908, No. 31, on verdict for plaintiff in case of Araminta Smathers v. Pittsburg & Butler Street Railway Company. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Trespass to recover damages for death of plaintiff's husband. Before TAYLOR, J., specially presiding.

The circumstances of the accident are stated in the opinion of the Supreme Court.

Verdict and judgment for plaintiff for $5,000. Defendant appealed.

*Error assigned* was in refusing binding instructions for defendant.

*T. C. Campbell*, with him *A. E. Reiber*, for appellant.—The deceased was guilty of contributory negligence: McCracken v. Traction Co., 201 Pa. 378; Dryden v. R. R. Co., 211 Pa. 620; Ehrisman v. Ry. Co., 150 Pa. 180; Wheelahan v. Traction Co., 150 Pa. 187; McPhillips v. Traction Co., 19 Pa. Superior Ct. 223; Gilmore v. Traction Co., 26 Pa. Superior Ct. 97; McCartney v. Traction Co., 27 Pa. Superior Ct. 222; Omslaer v. Traction Co., 168 Pa. 519; Kinter v. R. R. Co., 204 Pa. 497; Keller v. Ry. Co., 35 Pa. Superior Ct. 488; Lohrey v. Penna. R. R. Co., 36 Pa. Superior Ct. 287; Burke v. Traction Co., 198 Pa. 497; Moser v. Traction Co., 205 Pa. 481; Houston v. Traction Co., 28 Pa. Superior Ct. 374.

*John M. Greer*, with him *Thomas H. Greer* and *John B. Greer*, for appellee.—The rule to stop, look and listen is not to be inflexibly applied to foot passengers or others crossing a street railway, as enunciated in the following cases: Ehrisman v. Railway Co., 150 Pa. 180; Carson v. Fed. St., etc., Ry. Co., 147 Pa. 219; Gilmore v. Pass. Railway Co., 153 Pa. 31; Kestner v. Pittsburg & Birmingham Traction Co., 158 Pa, 422; Jackson v. Pittsburg, etc., Traction Co., 159 Pa. 399.

OPINION BY MR. JUSTICE ELKIN, January 3, 1910:

In the presentation of this case there has been a confusion of the stop, look and listen rule and the rule which imperatively requires the driver of a team to look for an approaching car immediately before driving upon the tracks of a street railway at a right-angled crossing of intersecting streets. The first rule applies to public crossings over what are commonly known as steam railroads, while the second relates to the duty of a traveler as he approaches the tracks of a street railway laid upon a public street. The degree of care required is not the same in both instances, and our cases have never held that it was. The syllabi in some of the earlier cases do state that it is the duty of a traveler, about to drive across a street railway, to stop, look and listen at the edge of the tracks and his neglect to do so is negligence per se. This appears in Ehrisman v. Passenger Railway Company, 150 Pa. 180, and in Wheela-

han v. Traction Co., 150 Pa. 187. The most casual reading of the opinions in these cases will show that the syllabi did not accurately state what the court decided as to the application of the stop, look and listen rule to street railway crossings. These cases only held that the rule is applicable in part to street railways, but the distinction as to the duty of the traveler in each class of cases was clearly pointed out. In Omslaer v. Traction Co., 168 Pa. 519, it was said that so much of the rule as requires the traveler to look and listen for an approaching car before going upon the tracks is applicable to street railways, but that there is no settled rule which requires him to stop before attempting the crossing. The rule as applicable to the facts of that case was properly stated, but the duty to listen is not always imperative and depends upon circumstances. If when he looks his view is obstructed so that he cannot see, it then becomes his duty to listen. What was really decided in these cases and in the long line of cases which follows was that it is the absolute duty of a traveler or the driver of a team at the intersection of two city streets upon which is laid a line of street railway to look immediately before going upon the tracks, and failure to do so is negligence per se. If when he looks he sees an approaching car so near as to make an attempt to cross dangerous, it is his duty to stop; or, if when he looks at the edge of the tracks his view is obstructed so that he cannot see it then becomes his duty to listen, and under some circumstances it may be his duty to stop as if when he looks and listens he still is in doubt about the location and movement of the car. If in any of these situations he fails in the performance of the duty required he is guilty of contributory negligence and cannot recover. The one positive and imperative duty always required under such circumstances is to look when the tracks are reached and immediately before attempting the crossing. Failure to perform this absolute duty will defeat a recovery under the authority of all our cases. In such a case no question can arise as to the proper place to look or whether there is a better place as in steam railroad grade crossing cases, because the settled rule is that the place to look is immediately before

going upon the tracks. What the driver of a team is required to do after looking depends upon what he sees when he looks. Whether he failed to perform his duty under the circumstances is sometimes a question of law for the court and sometimes of fact for the jury. If when he looks he sees a car so near as to make the attempt to cross dangerous and notwithstanding he attempts the crossing and a collision results he is so clearly guilty of contributory negligence that the court should say so as a matter of law. He can take no close chance except at his peril. If, however, when he looks he sees a car so far distant that in the exercise of ordinary prudent judgment he is justified in concluding that he can safely make the crossing and attempts to do so, it is for the jury to determine whether under the circumstances he should have stopped before attempting to drive over the tracks. In the present case we have concluded after a careful examination of the record that whether the deceased husband performed the duties required of him by law was a question of fact for the jury. There was testimony to show that as the horse and buggy approached the crossing the husband kept a lookout for an approaching car in one direction and the wife in the other. Both continued to look until the head of the horse was at the edge of the tracks. Up to this point they did all they were required to do. The contention that the driver should have stopped at some place along the intersecting street where he could have seen the approaching car, or if there was no such place along the street that it was his duty to get out of the buggy and walk ahead of his horse to a point where he could see, is without merit as applied to the case at bar. No such duty is required of the driver of a team at a street railway crossing as has been hereinbefore pointed out. The testimony shows that both husband and wife continued to look until the head of the horse had reached the tracks. As he looked he then saw for the first time the car rapidly approaching over an elevation in the street which obstructed a further view from the crossing. The car was running at an excessive rate of speed through the borough and seeing his danger he immediately turned the head of the

horse and attempted to drive alongside of the track so as to avoid the collision. He was too late, and received the injuries from which death resulted. Neither the horse nor the buggy was on the track at the time of the accident, but the front wheel was close enough to be caught by the overhang of the car. Certainly under these circumstances it was at least for the jury to say whether he was guilty of contributory negligence. The learned court below submitted the questions of negligence and of contributory negligence to the jury in a charge as favorable to appellant as the facts warrant and the law requires. We find no reversible error in the submission.

Judgment affirmed.