## Miller, Appellant, *v.* West Jersey and Seashore Railroad Company.

*Negligence—Railroads—Grade crossing—Death — Contributory negligence—Judgment for defendant n. o. v.*

In an action against a railroad company to recover for death of plaintiff's husband resulting from his being struck by an electric express train at a grade crossing where it appeared that before stepping upon the track plaintiff's husband had an unobstructed view for 967 feet, and had he then looked he must have seen the train in plain view, judgment was properly entered for defendant n. o. v.

Argued March 19, 1917. Appeal, No. 376, Jan. T., 1916, by plaintiff, from judgment of C. P. No. 5, Philadelphia Co., March T., 1915, No. 2059, for defendant non obstante veredicto in case of Elizabeth H. Miller, Administratrix of the Estate of Franklin C. Miller, deceased, v. West Jersey and Seashore Railroad Company. Before BROWN, C. J., STEWART, MOSCHZISKER, FRAZER and WALLING, JJ. Affirmed.

Trespass to recover for death of plaintiff's husband. Before MARTIN, P. J.

The facts appear by the opinion of the Supreme Court.

Verdict for plaintiff for $25,000. Judgment was subsequently entered for defendant non obstante veredicto. Plaintiff appealed.

*Error assigned,* among others, was in entering judgment for defendant n. o. v.

*Jacob Singer,* with him *David Bortin* and *Emanuel Furth,* for appellant.

*Sharswood Brinton,* for appellee, was not heard.

PER CURIAM, April 16, 1917:

Upon a review of the evidence in this case the court below could not have avoided the conclusion that the carelessness of the deceased, when about to cross the railroad tracks, was responsible for his death, and the judgment non obstante veredicto is affirmed on the following from the opinion directing it to be entered: "If the deceased did not see the electric train in time to save himself it was because he did not look. Where a person fails to see that which was plainly obvious, such person is clearly guilty of contributory negligence. The deceased must either have seen the electric train and have taken his chances of crossing in front of it, or he did not look. All the facts in the case evidence that the electric train was not one which came into view after the deceased was committed to the act of crossing; it was in plain view at the time that he stepped upon the tracks. The deceased was not a stranger at this railway crossing, as has already been shown, and his knowledge charged him with the necessity of exercising special care in crossing the tracks. It was shown that at the time he attempted to cross, the train that he expected to take would not reach the station for some eight minutes. Another point which would appear to be perfectly clear is that for the whole length of the picket fence, which separated the middle southbound track from the northbound track,

there was positively no obstruction of vision. This fence by measurement was 967 feet. When the deceased and the witness, Avis, stood west of the first outbound track, after leaving the news stand and before stepping upon the track, and also when they stood in the fifteen feet clear space between the two southbound tracks, they had an admittedly perfect, unobstructed view of the length of the fence, the 967 feet."

Judgment affirmed.