# Barnes *v.* Altoona & Logan Valley Electric Railway Company, Appellant.

*Negligence—Street railways—Collision—Contributory negligence—Failure to stop, look and listen—Non suit.*

In an action to recover damages for personal injuries it appeared that the plaintiff, after stopping his automobile at a grade crossing to permit a west bound trolley car to pass, crossed immediately behind it and was struck by a trolley car coming in the opposite direction; that he could not see beyond the west bound car, which had stopped, and that, notwithstanding this fact, he had attempted to cross the second track. Under such circumstances the plaintiff was guilty of contributory negligence and there can be no recovery.

It is an unbending rule that it is the duty of one about to cross a grade crossing to look immediately before committing himself to the crossing. Failure to observe the rule is negligence per se. If when one looks at the edge of the tracks his view is obstructed so that he cannot see, it then becomes his duty to listen and, if his eyes and ears will not enable him to safeguard himself against a car, which he is bound to know may be approaching, it is his duty to stop.

Argued May 6, 1925. Appeals Nos. 108 and 109 October T., 1925, by defendant from judgment of C. P. Blair County, January T., 1925, Nos. 80 and 81 in the cases of Joseph Barnes, George Barnes and Frances Barnes, Administrators of the Estate of John Barnes, deceased, and Frances B. Barnes v. Altoona & Logan

Valley Electric Railway Company.    Before PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ.    Reversed.

Trespass to recover damages for personal injuries. Before BALDRIGE, P. J.

The facts are stated in the opinion of the Superior Court.

Verdict for plaintiffs Joseph Barnes, George Barnes and Frances Barnes in the sum of $1500.00 and for Frances B. Barnes in the sum of $500.00, and judgment thereon.    Defendant appealed.

*Error assigned,* among others, was refusal of defendant's motion for judgment non obstante veredicto.

*S. B. Hare* for appellant.

*Thomas C. Hare,* and with him *A. M. Liveright* and *Robert F. Hare,* for appellee.

OPINION BY GAWTHROP, J., July 9, 1925:

Defendant appeals from two judgments against it following verdicts assessing damages to plaintiffs for personal injuries and for the destruction of an automobile, resulting from a collision between one of defendant's cars and the automobile at a grade crossing. The cases were tried together in the court below, were argued together in this court and will be disposed of in one opinion.

The disposition of the cases involves a determination of the question whether plaintiffs were contributorily negligent.    It appears from the evidence that Joseph Barnes, minor son of Frances B. Barnes, one of the plaintiffs, was driving an automobile which belonged to the estate of the latter's deceased husband, John Barnes, on the public highway leading from Tyrone to East Altoona.    Frances B. Barnes occupied

the front seat with the driver and there were three passengers on the back seat. At the crossing where the accident happened, at East Altoona Station, defendant maintains a double line of tracks running east and west, the south track taking the eastbound cars and the north track the westbound cars. For a distance of about five hundred feet east of the crossing the highway on which the plaintiffs were driving runs parallel to the tracks of defendant on the south side thereof. At East Altoona Station the highway crosses defendant's tracks at a right angle grade crossing. About 10:30 A. M. on the day of the accident as the driver of the automobile approached the crossing from the east he saw one of defendant's trolley cars approaching from the west on the eastbound track. He stopped his automobile ten feet from the south track and waited for the car to pass the crossing. When the car had barely cleared the crossing it stopped to unload passengers. The driver of the automobile thus described what followed: "As this one car was unloading passengers I put the car in low gear and started across the track in the rear of this car; as I got my front wheel on the track the other car hit me." When asked by his counsel whether he observed the track to the east, he said: "Yes, before I started. The car on the other track obstructed the view and I was hit before I had a chance to see the car that hit me." On cross-examination he said that he saw a car coming from Altoona, and pulled right up to the turn where the road goes over the tracks and stopped; that, after looking to see if there was a car coming and he could not see one, he "put it in low gear and started...... just the minute I got on the other track the other car hit me." A part of the cross-examination of the witness is as follows: Q. And just as you got on to the other track you were struck? A. Yes, sir. Q. Now when you passed you drove in the rear of the car standing there? A. Yes, sir. Q. When you got by that

car how far could you look down the track? A. I didn't get by the car until I was hit; just the front end of my car was by the standing car when it was hit. Q. When you got over the first track did you look for the approach of a car on the second track? A. No, as soon as I got over the first track I was hit, before I could look down the track on account of the obstruction of the car. Q. Do you say before you got over the first track you were hit? A. Before I got my whole car over. Q. Couldn't you look down, after you passed the first car, to see if there was another car approaching? A. No, sir. Q. Why? A. Because I was struck before I had a chance to look. Q. You could have looked, could you? A. No, sir. Q. Why not? A. Because I was struck before I got far enough to see down the track. Q. How far from the rear end of the standing car did you drive over the track? A. Right in the rear. Q. Now when you started up, did you look again? A. Just before I started I looked. Q. And that was the only look you gave? A. When I started up I couldn't see anything as I went on. Q. The last look you gave was before you started? A. Just as I started. Q. Then you traveled ten feet before you looked again? A. I looked as I was going up. Q. You stated a moment ago that the last look you gave was when you started and that was ten feet from the track? A. I looked just as I started; I looked to the right as I started and to the left after I started. Q. But you didn't look for that ten feet? A. I couldn't because of the other car. Q. How would that prevent you? A. Part of this was on the turn and part of it was hidden from view by the car standing there. Q. That is the only look you gave until you were struck? A. Yes, sir, the only one I had a chance to. I couldn't look on the other side. Q. Did you stop before you reached the second track? A. No, sir. Q. And so your view

was obstructed by the standing car? A. When I got up to that car, yes, sir. Q. Now when did you first see the approaching car that struck you? A. Not until it hit me." Frances B. Barnes, the mother of the driver, who sat beside him, testified that she did not look for the approach of a car from the east after the automobile started. It appears that both witnesses were familiar with the crossing and knew that cars ran in both directions. The width of the whole crossing was twenty-eight feet, and there was a space of ten feet between the eastbound and the westbound tracks.

The only rational inference to be drawn from this testimony is that the driver of the automobile attempted to cross the second track while the standing car made it impossible for him to see to the right for a sufficient distance to safeguard himself against a car approaching from the east. Under the circumstances, his own lack of caution bars recovery. It is an unbending rule that it is the duty of one about to cross the track of an electric railway company at a grade crossing to look immediately before committing himself to the crossing. Failure to observe the rule is negligence per se: Griffith v. Phila. R. T. Co., 267 Pa. 81, 84. If when one looks at the edge of the tracks his view is obstructed so that he cannot see, it then becomes his duty to listen and, if his eyes and ears will not enable him to safeguard himself against a car which he is bound to know may be aproaching, it is his duty to stop: Smathers v. Street Ry. Co., 226 Pa. 212, 215. Barnes' testimony is all to the effect that immediately after the eastbound car stopped he started to cross the first track and the intervening ten feet to the other track and did not stop again, although from the time he started he could not see whether a car was approaching from the east. He could have stopped on the first track, or when the front of his machine was on the space between the eastbound and westbound tracks. If he had done so he would have

seen the car coming and would have been safe. Instead of performing the positive and imperative duty of stopping immediately before committing himself to the second track when he could not see a car approaching from the east, he drove blindly on and took the chance at his own peril, in plain disregard of the dictates of the most ordinary prudence. A jury cannot be allowed to draw any other inference. The unfortunate accident was clearly the result of the negligence of the driver of the automobile.

There is a close analogy between the case at bar and Nolder v. Penna. R. R. Co., 278 Pa. 495, in which a pedestrian approached a double railroad track, stopped, looked and listened and then, without further stopping, walked over the first track and the space between the two tracks and, as he stepped into the middle of the second track, was struck by a passing train which he could have seen if he had looked immediately before committing himself to the second track. It was held that judgment should have been entered for defendant notwithstanding the verdict, on the ground that plaintiff was guilty of contributory negligence in failing to stop the second time before he undertook to cross the second track.

As the plaintiff, Frances B. Barnes, was in control of the automobile, we are constrained to hold that the contributory negligence of the driver is a bar to a recovery in her action for personal injuries, as well as in the action for damages to the machine.

The judgments are reversed and entered for defendant.